UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID MINCHELLA,

                Plaintiff,

v.

YVONNE BRANTLEY,

                Defendant.

_____/

Case No. 2:24-cv-12680

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER SUSTAINING
OBJECTIONS TO THE SPECIAL MASTER'S
REPORT [14], GRANTING MOTIONS FOR ATTORNEY'S
FEES, [17], AND REALLOCATING SPECIAL MASTER FEES [18]**

Plaintiff David Minchella, a state trooper, sued his supervisor Yvonne Brantley for various constitutional violations related to his placement on a "*Brady–Giglio* list." ECF No. 1; ECF No. 10-1. Defendant Brantley did not appear, and the clerk entered default against her. ECF No. 8. Plaintiff then moved for default judgment. ECF No. 10. The Court granted the motion for default judgment in part and referred the parties to a Special Master to make a recommendation on the amount of Plaintiff's damages. ECF No. 11. Plaintiff then objected to the Special Master's report and recommendation, moved for attorney fees, and moved for reallocation of the Special Master fees. ECF Nos. 16–18. For the reasons below, the Court will sustain the objections, award attorney's fees, and reallocate the Special Master fees.

1

## BACKGROUND

Plaintiff has worked for the Michigan State Police since 2017. ECF No. 1, PageID.2. The Department posted Plaintiff in Flint and assigned Defendant Brantley as his supervisor. *Id.* In May 2023, a State Police sergeant in Flint faced an internal affairs investigation for allegedly sending pictures of his genitalia to a sheriff's deputy working in the Genesee County jail. *Id.* at PageID.3–4. Plaintiff discussed the incident with a sheriff's deputy while he was at the jail lodging a suspect. *Id.* at PageID.3. When Plaintiff returned to his post, he reported the sergeant's inappropriate behavior. *Id.* at PageID.3. As a result, on June 8, 2023, Plaintiff was questioned and interviewed by State Police Internal Affairs section about the incident. *Id.* at PageID.3–4.

A few months later, Plaintiff discovered that he had been placed on Genesee County's *Brady–Giglio* list. *Id.* at PageID.4. The *Brady–Giglio* list tracks the names of officers who have "sustained incidents of untruthfulness or lack of candor placing their credibility into question and requiring that said information be disclosed to the criminal defendant." *Id.* at PageID.4. An officer whose name is on the list may often be screened from serious cases, have charges declined by a prosecutor, or even lose his job. *Id.* at PageID.4–5.

After learning that he was on the list, Plaintiff contacted his union representative on September 8, 2023 to ask if they knew why he had been placed on the list. *Id.* at PageID.5. He learned that Defendant Brantley reported him to the prosecutor's office along with the other troopers in retaliation for reporting the

sergeant's inappropriate behavior and participating in the internal affairs investigation. *Id.* Later, on September 21, 2023, Defendant emailed Plaintiff and others to inform them that they were removed from the list. *Id.* at PageID.6. Even though he was taken off the list, having been on the list triggered heightened scrutiny from prosecutors. ECF No. 10-1, PageID.56–57. And despite Brantley's assertion that Plaintiff was no longer on the list, he was informed that because of his placement on the list he was no longer allowed to work at his detail on the "Secure Cities Partnership" and would be transferred to Shiawassee County. *Id.* at PageID.56.

Because of the inclusion of his name on the list, Plaintiff suffered extreme stress, anxiety, embarrassment, and humiliation; was reassigned police details; and lost overtime work from the Secure Cities Partnership. *Id.* at PageID.55–58; ECF No. 14-1, PageID.113. Plaintiff has since had to fill out forms that require him to disclose whether he has ever been on the list, and he may be subject to such disclosure throughout his career. ECF No. 10-1, PageID.57; *see* ECF No.14-1, PageID.123 (explaining that being placed on the list will come up whenever Plaintiff testifies in court). Because of those occurrences, that the Court accepted as true on a motion for default judgment, the Court granted Plaintiff's claim for First Amendment retaliation and denied Plaintiff's claims for violation of Due Process and the Equal Protection Clause. ECF No. 11, PageID.66.

The Court referred the issue of damages to a Special Master. ECF No. 11, PageID.67. Plaintiff submitted a supplemental brief to the Special Master on the issue of damages. ECF No. 13. The Special Master held an evidentiary hearing with

3

Plaintiff and his Counsel. ECF No. 14-1. Following the evidentiary hearing, the Special Master issued a report recommending that the Court award Plaintiff $11,500 in compensatory damages for lost overtime and refrain from awarding punitive damages. ECF No. 14, PageID.94.  The Special Master found that Plaintiff proved "actual injury resulting from Defendant's actions" because he testified that he lost $11,500 in overtime due to being placed on the *Brady-Giglio* list. *Id.* at PageID.92. The Special Master, however, declined to award any further compensatory damages because "plaintiff did not request any additional specific compensatory damages." *Id.*

The Special Master also recommended that Plaintiff not be awarded punitive damages because "there is insufficient evidence to show that Defendant's actions were driven by evil motive or intent, or that Defendant's actions were reckless or callously indifferent to Plaintiff's rights." *Id.* at PageID.93. In support, the Special Master noted that "[t]he record is devoid of any admissible evidence supporting any finding of evil motive or intent or recklessness." *Id.*

Plaintiff objected to the Special Master's recommendation of no further compensatory damages beyond $11,500 in lost overtime and no punitive damages. ECF No. 16. Plaintiff also filed, concurrently with his objections, motions for attorney's fees, costs and prejudgment interest, and reallocation of special master fees. ECF Nos. 17, 18. The Court will address the objections to the Special Master's Report and Recommendation and Plaintiff's motions below.

4

## LEGAL STANDARD

Federal Rule of Civil Procedure 53 sets forth the appropriate standard of review for a district court in reviewing findings of fact and conclusions of law made or recommended by a Special Master. The Court reviews de novo factual findings and legal conclusions of the Special Master. *See* Fed. R. Civ. P. 53(f). The Court may "adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions." Fed. R. Civ. P. 53(f)(1).

## DISCUSSION

I.    <u>Objections to the Special Master's Report</u>

Plaintiff argued that the Special Master erred in failing to consider and award "emotional-based compensatory damages" and punitive damages. ECF No 16, PageID.155, 158.

*A. Compensatory Damages*

A plaintiff may recover compensatory damages for a § 1983 claim when the Court finds that Plaintiff's First Amendment rights were violated. *King v. Zamiara*, 788 F.3d 207, 213 (6th Cir. 2015). But a plaintiff "is not entitled to compensatory damages unless he can prove actual injury caused by the violation." *Id*. (citing *Carey v. Piphus*, 435 U.S. 247, 264 (1978)). In cases addressing damages for "an injury that is likely to have occurred but difficult to establish" courts can award some form of presumed damages. *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 310–11 (1986). "Compensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as impairment of reputation, personal

5

humiliation, and mental anguish and suffering." *Id.* at 307 (citation modified); *see also Seymore v. Farmer*, No. 16-13808, 2022 WL 18027629, at *2 (E.D. Mich. Dec. 29, 2022). Compensatory damages are often difficult to calculate with precision, and therefore, "[t]he amount is left to the sound discretion of the fact finder." *King*, 788 F.3d at 215.

As an initial matter, Plaintiff "takes no issue with" the Special Master's recommendation to award Plaintiff $11,500 in compensatory damages for lost overtime. ECF No. 16, PageID157. The Court finds that Plaintiff proved an actual injury—namely lost overtime wages, reputational harm, and emotional harm from possible negative career consequences—that resulted from Defendant's conduct. The Court will therefore adopt the Special Master's recommendation in part and award Plaintiff the $11,500 in compensatory damages for lost overtime.

Plaintiff did take issue with "the Special Master['s fail[ure] to consider and determine whether Plaintiff was entitled to emotional distress damages." *Id.* The Special Master recommended that because "Plaintiff did not request any additional specific compensatory damages" the Court should not award any additional compensatory damages. ECF No. 14, PageID.92.

Plaintiff demonstrated and requested, albeit in an imprecise manner, non-economic damages in his pleadings, in his brief on damages, and on the record in the evidentiary hearing held by the Special Master. *See* ECF No. 1, PageID.10 (pleading non-economic damages); ECF No. 10-1, PageID.55–56 (explaining emotional and reputational damage from Defendant's conduct); ECF No. 13, PageID.80–81

6

(outlining anticipated testimony regarding non-economic damages); *see generally* ECF No. 14-1 (testifying regarding non-economic damages); *see also* ECF No. 10, PageID.51 (requesting default judgment "in the amount of $1,000,000.00 against Defendant").

What is more, the testimony elicited at the hearing clearly demonstrates that Plaintiff was harmed emotionally and reputationally by Defendant's conduct in the past and in the future. *See* ECF No. 14-1, PageID.114–117, 119, 122–124 (testimony regarding Plaintiff's fear for losing his job, reputational damage from being placed on *Brady-Giglio* list, and future harmful effects on ability to testify credibly in Court). Outside of his complaint, Plaintiff did not give an exact dollar amount as to the amount he suffered, but that fact does not preclude him from compensatory damages for emotional and reputational harm. *See Stachura*, 477 U.S. at 310–11.

In sum, Plaintiff demonstrated that when Defendant caused him to be placed on the *Brady-Giglio* list, Plaintiff feared he would lose his job. Plaintiff's fear was credible because the evidence in the record demonstrates that arrests made by Plaintiff could not be charged because Plaintiff was on the *Brady-Giglio* list. ECF No. 14-1, PageID.109–110. Plaintiff demonstrated that he could not credibly testify in Court because he would be asked and required to disclose that he was on a list that called into question his honesty and integrity. Without being able to perform core functions of a law enforcement officer, Plaintiff credibly feared he could lose his job. His fear was substantiated by being removed from the Secure Cities Partnership. What is more, Plaintiff demonstrated a reputational injury moving forward because,

even though he was taken off the *Brady-Giglio* list, if asked, Plaintiff will still need disclose that he was once on list, undermining his credibility. *See* ECF No. 14-1, PageID.120 (Plaintiff describing having to testify in Court and explain in front of the "victim's family" that "my department thinks I'm a liar").

As for the amount of non-economic damages, Plaintiff requested compensatory "damages proportionate to that harm." ECF No. 16, PageID.157. Plaintiff did not provide any further analysis on an amount to which he believed he was entitled. Because of the lack of evidence, and because the decision is in the Court's discretion, the Court will award additional compensatory damages in the amount of $5,000 for emotional and reputational injuries. Fed. R. Civ. P. 53(f)(1) (allowing the Court to modify the special master's findings or recommendations). The Court bases the award primarily on the stress suffered by Plaintiff during his brief time on the *Brady-Giglio* list. *See* ECF No. 10-1, PageID.55–56. But the number also accounts for future non-economic harms that Plaintiff will suffer due to his time on the list. Plaintiff's objection as to compensatory damages is therefore sustained, and the Court will modify the award to add $5,000 for emotional and reputational injuries.

### B. *Punitive Damages*

The Special Master recommended that the Court not award punitive damages because there was "insufficient evidence to show . . . that Defendant's actions were reckless or callously indifferent to Plaintiff's rights." ECF No. 14, PageID.93. Plaintiff objected on two bases. First, that Defendant admitted to having an evil motive when a default was entered because, upon entry of default, the well-pleaded allegations are

taken as true. ECF No. 16, PageID.158. Second, that the mere finding of a First Amendment violation is "sufficient in and of itself to establish Plaintiff's entitlement to punitive damages." *Id.* at PageID.159.

Punitive damages are never awarded as of right. *Smith v. Wade*, 461 U.S. 30, 52 (1983). "Punitive damages are appropriate in a § 1983 action 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *King*, 788 F.3d at 216 (quoting *Smith*, 461 U.S. at 56). When considering punitive damages, the factfinder's discretionary moral judgment should be guided by the purpose of punitive damages— "to punish the defendant for his willful or malicious conduct and to deter others from similar behavior." *Stachura*, 477 U.S. at 306 n.9; *see King*, 788 F.3d at 216–17.

In granting default judgment, the Court has already found that Plaintiff stated a claim for retaliation. ECF No. 11, PageID.62–63. Retaliation on the basis of the exercise of First Amendment rights necessarily requires that the defendant act "with the purpose of infringing upon the plaintiff's federally protected rights." *King*, 788 F.3d at 216 (noting that "a defendant who has been found liable for First Amendment retaliation has engaged in conduct that warrants consideration of an award of punitive damages"). In fact, an element of a First Amendment retaliation claim is that the adverse action was motivated at least in part by the plaintiff's protected conduct. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Here, the Court must accept as true that Defendant had Plaintiff put on the *Brady-Giglio* list "in

9

retaliation for his reporting of [police] sexual harassment." ECF No. 1, PageID.6. The Court already established that Defendant's actions were motivated by Plaintiff's exercise of his constitutional rights. ECF No. 11, PageID.62–63. And she did the same thing to other troopers who talked to investigators about a cop who sent unsolicited photos of his genitalia. ECF No. 1, PageID.5–6; ECF No. 14-1, PageID.110. Defendant thus intentionally retaliated against Plaintiff because of his speech.

That said, Plaintiff's second argument—that a First Amendment violation necessary establishes entitlement to punitive damages—is misguided. As noted above, the finding that Defendant violated Plaintiff's First Amendment rights does not entitle Plaintiff to punitive damages; it merely "warrants consideration" of punitive damages. *King*, 788 F.3d at 216; *Irving v. Carr*, No. 2:16-cv-728, 2019 WL 4929044, at *17 (S.D. Ohio Oct. 7, 2019). The Court agrees with Plaintiff, however, that, taking the well-pleaded allegations true and considering the testimony in the evidentiary hearing, Plaintiff is entitled to punitive damages. Accordingly, the Court will sustain Plaintiff's objection.

Here, the complaint is replete with evidence that Defendant was at least reckless or callously indifferent to Plaintiff's rights, and (more likely) that she acted with an evil motive. The Court will summarize the pertinent facts, taken as true, that warrant an award of punitive damages.

The relevant facts are quite basic. In sum, Defendant retaliated against Plaintiff for reporting inappropriate behavior of Sgt. Chiros and for participating in the ensuing investigation. After participating in the investigation, Plaintiff

discovered that he was place on the *Brady-Giglio* list, causing many charges he filed to be declined by the prosecutor. *See* ECF No.14-1, PageID.109–110 (explaining that, because Plaintiff was on the list, "some pretty serious arrests where [his] subjects were actually released and charges were declined"). Defendant placed Plaintiff (and others) on the list in retaliation for participating in the investigation.

Plaintiff was moved out of the Secure Cities Partnership because of his name on the list and lost overtime compensation. For the rest of his life, when asked, Plaintiff must testify that he was once on the *Brady-Giglio* list, calling into question his honesty and integrity. Being placed on the list caused Plaintiff emotional distress and reputational damage into the future, plus lost overtime wages. Defendant caused Plaintiff to be placed on a list that called into question his honesty and integrity solely because Plaintiff reported inappropriate behavior and participated in an ensuing investigation. In doing so, Defendant caused emotional distress, reputational harm, and professional setbacks—not to mention endangering the safety of the community. *See* ECF No.14-1, PageID.109–110 (Defendant's conduct caused people Plaintiff arrested to "walk[] free from some pretty serious felony charges."). Defendant's conduct was reckless, callous and surely demonstrated an evil motive. Therefore, the Court will exercise its discretion to award Plaintiff punitive damages in the amount of $20,000. Plaintiff's objection as to punitive damages is thus sustained, and the Court will modify the amount accordingly.

II.   <u>Plaintiff's Motion for Reallocation of Special Master Fees</u>

11

Plaintiff moved to reallocate the Special Master's compensation of $1,000 to Defendant. ECF No. 18. Defendant neither responded nor opposed the motion. The Court will grant Plaintiff's motion.

The Court previously noted in the Order appointing a special master that "Plaintiff may move under Fed. R. Civ. P. 53(g) for reallocation of the special master payment, or the master may make such a recommendation." ECF No. 11, PageID.67–68. Plaintiff argued that "the imposition of such a fee against Plaintiff punishes him for coming forward to vindicate his rights." ECF No. 18, PageID.209. The Court agrees. Taking the well-pleaded allegations as true, Defendant's conduct caused Plaintiff harm and thus necessitated the action in this court. Defendant never appeared nor responded to any of the proceedings. The Court, therefore, granted Plaintiff's motion for a default judgment on the First Amendment retaliation claim. ECF No. 11. The need for the Special Master was due to Defendant's conduct. The Court will thus impose the Special Master's fees on Defendant as the party responsible for the harm and these subsequent proceedings.

III.   <u>Plaintiff's Motion for Attorney Fees</u>

Plaintiff moved for attorney's fees, asking the Court to award $12,112.50 in reasonable attorney fees, $1,155.72 in costs, and an additional amount in prejudgment interest. ECF No. 17, PageID.170. Defendant neither responded nor opposed the motion. The Court will grant Plaintiff's motion.

42 U.S.C. § 1988(b) permits courts to grant "a reasonable attorney's fee" to "the prevailing party" in a § 1983 action. *Maryville Baptist Church v. Beshear*, 132 F.4th

453, 455 (6th Cir. 2025), *petition for cert. filed*, (U.S. July 22, 2025) (25-96). A "prevailing party" is one who succeeds on a significant issue "which achieves some of the benefit the parties sought in bringing suit." *Farrar v. Hobby*, 506 U.S. 103, 109 (1992) (quotation omitted). A prevailing party in a civil rights action should ordinarily, absent special circumstances, be awarded attorney fees. *See Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 759 (1989), *superseded by statute on other grounds by* Civil Rights Act of 1991, Pub. L. No. 102166, 105 Stat. 1071. When a federal court considers attorney's fees, the "primary concern is that the fee awarded be 'reasonable.' A reasonable fee is 'adequately compensatory to attract competent counsel yet avoids producing a windfall for lawyers.'" *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 616 (6th Cir. 2007) (quoting *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999) and *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004)) (citation modified). The Court possesses substantial discretion to award fees, but "must provide a clear and concise explanation of its reasons for the fee award." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) (quotation omitted).

When attorney's fees are merited, "[t]he lodestar method of fee calculation is the method by which federal courts should determine reasonable attorney's fees under federal statutes which provide for such fees." *In re Boddy*, 950 F.2d 334, 337 (6th Cir. 1991). The lodestar method requires the Court to "multiply[] the attorney's reasonable hourly rate by the number of hours reasonably expended." *Id.* (quotation omitted).

The Court begins its attorneys' fee award calculation by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The calculation provides the Court with the "fee applicant's 'lodestar.'" *Adcock-Ladd*, 227 F.3d at 349 (citations omitted). The Court may, "within limits, adjust the 'lodestar' to reflect relevant considerations peculiar to the subject litigation." *Id.* (citation omitted).

Twelve factors influence the Court's adjustment of a fee award. *Perry v. AutoZone Stores, Inc.*, 624 F. App'x 370, 372 (6th Cir. 2015) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). The twelve factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Disabled Patriots of Am., Inc. v. Taylor Inn Enterps., Inc.*, 424 F. Supp. 2d 962, 965–66 (E.D. Mich. 2006) (quotation omitted); *see also Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989) ("The *Johnson* factors may be relevant in adjusting the lodestar amount, but no one factor is a substitute for multiplying reasonable billing rates by a reasonable estimation of the number of hours expended on the litigation."). The Court's analysis may subsume many factors. *See Hensley*, 461 U.S. at 434 n.9 (recognizing that a court's lodestar calculation may tacitly consider some of the *Johnson* factors).

A. *Reasonable Hourly Rate*

To determine a reasonable hourly rate, "courts should look to the hourly rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Fuhr v. Sch. Dist. of Hazel Park*, 364 F.3d 753, 762 (6th Cir. 2004) (citing *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)).

Plaintiff requests a $375 hourly rate for Attorney Kevin Kelly. ECF No. 17, PageID.167. The rate is reasonable in light of Attorney Kelly's fifteen years of experience, ECF No. 17-3, PageID.203, the prevailing market rate for employment and/or civil rights attorneys, and similar awards in other cases in the Sixth Circuit.

First, the State Bar of Michigan's Economics of Law Practice Survey 2023 supports the reasonableness of Attorney Kelly's hourly rate. ECF 17-2; *see Hazzard v. Schlee & Stillman, LLC*, No. 13–10038, 2014 WL 117411, at *3 (E.D. Mich. Jan. 13, 2014) (noting that the Eastern District generally accepts the State Bar of Michigan's Economics of Law Practice Survey as its benchmark to determine reasonable hourly rates for attorneys). In Michigan, the median rate for civil rights attorneys is $350 per hour, and the median rate for plaintiff-side employment attorneys is $400 per hour.  ECF No.17-2, PageID.181. Attorney Kelly's rate of $375 per hour is between the median rates, and it is in line with his experience and expertise. Furthermore, courts in the Eastern District of Michigan have approved prevailing market rates exceeding $375 per hour. *See, e.g.*, *Sevy v. Barach*, No. 17-13789, 2022 WL 4234951 (E.D. Mich. Sept. 14, 2022) (awarding $500 per hour to an attorney who practiced for fourteen years and had experience with civil rights cases);

*Kelmendi v. Detroit Bd. of Educ.*, No. 12-14949, 2017 WL 1502626 (E.D. Mich. Apr. 27, 2017) (awarding $400 per hour for a plaintiff-side employment lead attorney).

Accordingly, the Court will use the reasonable hourly rate of $375 to calculate the fees award.

### B. Reasonable Number of Hours

In total, Plaintiff's Counsel spent 32.3 hours working on Plaintiff's case. ECF No. 17–3, PageID.203.

The "fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437. To carry the burden, attorneys must maintain time records detailed enough to enable courts to review the reasonableness of the hours expended. *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990), *abrogated on other grounds by, Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598 (2001). Courts then review the billing claims and exclude "[e]xcessive, redundant, or otherwise unnecessary hours." *Butcher v. Bryson*, No. 3:12–00251, 2014 WL 4385876, at *3 (M.D. Tenn. Sept. 5, 2014) (citing *Hensley*, 461 U.S. at 434).

In the Court's experience, thirty-two hours of work is reasonable for filing an employment and/or civil rights claim, submitting a brief and attending a hearing on damages with a special master, objecting to the special master's report, and bringing motions for attorney's fees and reallocation of special master's fees. And detailed time entries indicate substantive legal work. *See* ECF No. 17-4. No notation shows that

16

Plaintiff's Counsel billed time for excessive, redundant, or unnecessary work. Accordingly, the hours billed by Plaintiff's Counsel are reasonable.

### C. Lodestar Amount

Based on the hours and rates discussed above, the lodestar amount for Plaintiff's Counsel Kevin Kelly is $12,112.50 (32.30 hours multiplied by $375/hour).

### D. Other Factors

The lodestar calculation subsumes several of the *Johnson* factors.[1] Given the unique default judgment posture, the only relevant factor that the Court will address further is the amount involved and the results obtained. *See Murphy v. Vaive Wood Prods. Co.*, 802 Fed. Appx. 930, 936 (6th Cir. 2020). "Where recovery of private damages is the purpose of . . . civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." *Id.* (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).

Including the modifications detailed above, the Court will award Plaintiff $36,500 in total damages. Plaintiff seeks attorney's fees for about half that amount – more than a standard 33% contingency fee in many civil cases. But the attorney's fees need not be proportional to the damages amount. *See Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995)

---

[1] For example, the reasonableness of hours worked and of hourly rates includes: "the time and labor required"; "the skill requisite to perform the legal service properly"; "the customary fee"; "time limitations imposed by the client or the circumstances"; "the experience, reputation, and ability of the attorneys"; and "the nature and length of the professional relationship with the client." *Disabled Patriots*, 424 F. Supp. 2d at 965–66.

("In the civil rights area, there is no requirement that the amount of an award of attorneys' fees be proportional to the amount of the underlying award of damages."). Considering the amount of the award and because Plaintiff's Counsel effectively brought and managed the case toward a positive result, the Court will not adjust the lodestar calculation based on the *Johnson* factors.

### E. Expenses and Costs

Plaintiff requested an award of $1,155.72 in expenses. ECF No. 17, PageID.168. Plaintiff's invoice reflects the following costs: $405.00 filing fee, $10.72 in postage, $75 in process server fees, and $665.00 in court reporter fees for the evidentiary hearing. ECF No.17-4.

42 U.S.C. § 1988 allows district courts to award "those incidental and necessary expenses incurred in furnishing effective and competent representation." *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 827 (6th Cir. 2013) (citation modified). Recoverable expenses are those "incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Id.* (citation modified). The Court finds that the expenses requested by Plaintiff are reasonable and those which are normally awarded to a client. Given that they are reasonable, the Court will award Plaintiff $1,155.72 in costs and expenses.

18

## F. Prejudgment Interest

Finally, Plaintiff requested that the Court award prejudgment interest.[2] ECF No. 17, PageID.162. When there is no statutory provision prohibiting or granting prejudgment interest, the general rule in the Sixth Circuit is that the award of prejudgment interest is in the discretion of the court. *Sevy v. Barach*, No. 17-cv-13789, 2022 WL 4234951, at *10 (E.D. Mich. Sept. 14, 2022) (citing *EEOC v. Wooster Brush Co. Emps. Relief Ass'n*, 727 F.2d 566, 579 (6th Cir. 1984)); *see also Pucci v. Somers*, 834 F. Supp. 2d 690, 705 (E.D. Mich. Dec. 16, 2011) (awarding prejudgment interest for First Amendment retaliation claim because "the award of prejudgment interest in cases of employment discrimination . . . also appl[ies] in [a retaliation] case").

In considering prejudgment interest, courts look to "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 495 (6th Cir. 2013) (quoting *Wickham Contracting Co. v. Loc. Union No. 3, IBEW, AFL-CIO*, 955 F.2d 831, 834 (2d Cir. 1992)). Prejudgment interest is compensatory and therefore "should not be awarded if it would result in the overcompensation of the plaintiff." *Id*.

Plaintiff requested prejudgment interest "on the amount of the final judgment." ECF No. 17, PageID.169. As discussed above, the final judgment will

---

[2] Plaintiff did not request a specific amount in prejudgment interest in light of its objections to the Special Master's Report and uncertainty over the final amount. *See* ECF No. 17, PageID.169.

include $11,500 in compensatory damages for lost overtime, $5,000 in compensatory damages for pain and suffering, and $20,000 in punitive damages.

The Court will award Plaintiff both economic and non-economic damages. "Economic injuries are those that arise from damage to a financial interest, such as a contract, accumulated medical bills, or property." *Gray v. Barnett*, No. 2:20-cv-02947, 2024 WL 4005091, at *1 (W.D. Tenn. May 30, 2024). By contrast, "[n]on-economic injuries are those that arise from damage to non-financial interests, such as awards for pain and suffering from bodily harm, violations of civil rights, and diminished reputations." *Id.* at *2. Here, Plaintiff's reputational and emotional harm are non-economic damages. The wages from lost overtime are economic damages.

First, the Court will award prejudgment interest on the $11,500 in Plaintiff's lost overtime wages. Prejudgment interest is part of complete compensation for past lost wages. *See Howe v. City of Akron*, 801 F.3d 718, 751 (6th Cir. 2015) (holding that the district court abused its discretion by not awarding prejudgment interest on back pay). But for Defendant's unconstitutional conduct, Plaintiff would have been paid and able to use that money since the date of the injury. Prejudgment interest is therefore appropriate here to make Plaintiff whole for the time value of his lost wages. *See In re ClassicStar*, 727 F.3d at 495–96 (explaining that "prejudgment interest is intended to make the plaintiff whole"); *E.E.O.C. v. Wilson Metal Casket Co.*, 24 F.3d 836, 842 (6th Cir. 1994) ("Prejudgment interest helps to make victims of discrimination whole and compensates them for the true cost of money damages they incurred.").

Second, the Court will not award prejudgment interest on the compensatory damages for emotional distress and reputational harm as prejudgment interest on non-economic damages does not accord with the general purpose of prejudgment interest. *Westbrook v. Chattanooga Hamilton Cnty. Hosp. Auth.*, 2025 U.S. Dist. LEXIS 143226, at *7 (E.D. Tenn. June 26, 2025) (noting that the sole purpose of pre-judgment interest is to compensate the plaintiff for the time value of money and the effects of inflation) (quotations omitted); *see also Macmaster v. Busacca*, No. 2:21-cv-11052, ECF No. 250, PageID.9364–9368 (E.D. Mich. Sept. 10, 2025) (Murphy, J.) (collecting cases and declining to award prejudgment interest for non-economic damages in § 1983 action, in part, because "courts in the Sixth Circuit generally do not award prejudgment interest on non-economic damages").

Third, because punitive damages are not meant to compensate a Plaintiff for lost wages and because the vast majority of courts hold that prejudgment interest is not applicable to punitive damages, the Court will not award Plaintiff prejudgment interest on the punitive damages award. *See Ortiz v. Bright*, No. 2:98-cv-1031, 2006 WL 1133296, at *3 (S.D. Ohio Apr. 26, 2006) (collecting cases and noting that "[t]he majority of courts, however, deny the collection of prejudgment interest on punitive damages . . . because prejudgment interest has a compensatory purpose while punitive damages are essentially meant to punish.").

i.   *Method for Calculating Prejudgment Interest*

Because Plaintiff will be awarded prejudgment interest on some of his damages, the Court must determine the proper method for determining the

21

prejudgment interest rate and accrual date. "[T]he determination of the prejudgment interest rate [is] within the sound discretion of the district court." *Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 619 (6th Cir. 1998).

Plaintiff argued that 28 U.S.C. § 1961 "is a reasonable method for calculating prejudgment interest awards." ECF No. 17, PageID.169. § 1961(a) states that "interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." The Sixth Circuit has held that "the statutory post-judgment framework set forth in 28 U.S.C. § 1961 is a reasonable method for calculating prejudgment interest awards." *Ford*, 154 F.3d at 619. The Court agrees and will therefore use § 1961 to calculate prejudgment interest.

### ii.   *Date of Accrual*

Prejudgment interest on the economic damages portion of the award, accrued from the date the of the harm (being placed on the *Brady-Giglio* list in September 2023) until the date of the judgment (October 20, 2025) should be awarded to adequately compensate Plaintiff for the wages lost. *See In re Zelazny*, 659 B.R. 544, 583 (Bankr. E.D. Mich. 2024) ("Federal courts have exercised broad discretion in determining the time from which prejudgment interest should accrue . . . . [such as] from the date an adversary complaint was filed."). Interest accruing from the date of the harm will more fully compensate Plaintiff for the time value of money lost by having to bring this action to recover his damages he was entitled to because of

Defendant's actions. The interest will thus be calculated from the date of the harm, September 1, 2023, until the date judgment is entered. *See* ECF No. 1, PageID.4 (stating that Plaintiff heard he was placed on the list in "early September 2023").

### iii.    *Prejudgment Interest Rate*

Next, however, the Court must consider what the rate should be. Although the Sixth Circuit has "upheld awards of pre-judgment interest calculated pursuant to 28 U.S.C. § 1961, a mechanical application of the rate at the time of the award amounts to an abuse of discretion." *Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Mich.*, 751 F.3d 740, 751 (6th Cir. 2014) (quoting *Schumacher v. AK Steel Corp. Ret. Accumulation Pension Plan*, 711 F.3d 675, 686 (6th Cir. 2013)).

The Sixth Circuit has instructed courts to consider case-specific factors when determining the appropriate prejudgment interest rate. These factors include the remedial goal of making the plaintiff whole, the prevention of unjust enrichment on behalf of the wrongdoer, the lost interest value of money wrongly withheld, and the rate of inflation. *Schumacher*, 711 F.3d at 687. Still, "district courts may fashion an award in their sound discretion." *Id.*

Applying these principles, the Court finds that a prejudgment interest rate based on the date of the harm, 5.39%[3] , is appropriate to compensate Plaintiff for the

---

[3]   Federal   interest   rates   for   civil   judgments   can   be   found   at https://jnet.ao.dcn/financial-management/accounting/post-judgment-interest-rates. The interest rate applicable under 28 U.S.C. § 1961 to a judgment entered (or date of harm) on September 1, 2023 is the interest rate for the preceding calendar week— 5.39%. The Court believes the interest rate from the date of the harm will more fairly compensate Plaintiff than the interest rate on the day of judgment (3.65%).

time value of money he lost by not receiving overtime with the Secure Cities Partnership. *See also Ashford v. Univ. of Michigan*, No. 2:20-cv-10561, 2025 WL 984351, at *9 (E.D. Mich. Mar. 31, 2025) (awarding prejudgment interest from the date of the complaint through the issuance of judgment in accordance with the rate from 28 U.S.C. § 1961). The 5.39% rate is nearly the highest rate during the relevant time period; however, interest rates remained at four to five percent for over another year. As a result, the 5.39% rate neither overcompensates nor undercompensates Plaintiff for his lost wages.

## CONCLUSION

For the foregoing reasons, the Court will adopt the Special Master's Report as to economic, compensatory damages, and sustain Plaintiff's objections to the Special Master's Report as to non-economic, compensatory damages, and punitive damages. Furthermore, the Court will grant Plaintiff's motions for attorney fees, costs, and prejudgment interest as well as Plaintiff's motion to reallocate the Special Master's fees.

**WHEREFORE**, it is hereby **ORDERED** that Plaintiff's Objections to the Special Master's Report and Recommendation are **SUSTAINED.**

**IT IS FURTHER ORDERED** that Plaintiff is **AWARDED** $16,500 in compensatory damages and $20,000 in punitive damages.

**IT IS FURTHER ORDERED** that Plaintiff's motion for attorney's fees, costs and prejudgment interest [17] is **GRANTED**. Plaintiff is therefore **AWARDED** $12,112.50 in attorney's fees and $1,155.72 in costs.

24

**IT IS FURTHER ORDERED** that Plaintiff's motion for reallocation of special master fees [18] is **GRANTED.** Defendant must **PAY** $1,000 to Special Master Mr. Dane Lepola.

**IT IS FURTHER ORDERED** Plaintiff is **AWARDED** prejudgment interest on its economic damages for the period between September 1, 2023 through the date of judgment October 20, 2025 at the rate of 5.39%.

This is a final order that closes the case.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: October 21, 2025